UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

                                                        Crim. No. 20-20088
                                                        Hon. David M. Lawson

SHIRLEY COX,

Defendant.

_____/

## MRS. COX'S SENTENCING MEMORANDUM
## AND MOTION FOR DOWNWARD VARIANCE

A sentence of probation is sufficient, but not greater than necessary for Shirley Cox, a 70-year old remorseful individual with serious medical conditions. Although financial strife underpinned her willingness to wrongfully receive Social Security Income, Mrs. Cox's ultimate decision to do so, was conscious and knowing. But that decision, one that has significantly impacted her life, does not define her. She is not simply the sum of her mistakes, but a person who made a mistake, who has admitted to that mistake both to authorities and this Court, and who wants to make amends for it. The guideline range is 12 to 18 months, however any custodial

1

sentence for an individual like Mrs. Cox, would be greater than necessary. This memorandum seeks to present the Court with a fuller picture of Mrs. Cox in support of a request for a downward variance to probation or alternatively 1 day served with a term of supervised release to follow.

## I.
## Sentencing Considerations

The United States Code is quite explicit about the role of 18 U.S.C. §3553(a). The holding of the Supreme Court in *United States v. Booker*, "requires a sentencing court to consider Guidelines ranges. . . but it permits the court to tailor the sentence in the light of the other statutory concerns as well, see § 3553(a)." 543 U.S. 220, 245 (2005). Section 3553(a) mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes ... [of §3553(a)(2)]." Counsel highlights the following factors to assist the Court in imposing a sentence that satisfies goals of sentencing and warrants a sentence of probation or time served with a term of supervised release.

### A. The History and Characteristics and the Nature and Circumstances of the Offense.

Ms. Cox is 70 years old. In those 70 years, she has never had any contact with the criminal justice system prior to the instant offense. She has spent the majority of her life in Metro Detroit where she raised 3 children that were born during her first marriage. Although Mrs. Cox reported that her basic needs were met, she grew up

2

in a tumultuous household. Her parents drank heavily and fought among themselves when they drank. Her father was abusive to her and her siblings as well as her mother. Mrs. Cox's father was absent from her life for 4 or 5 years because he was incarcerated for producing "moonshine." She dropped out of high school at 15 years of age after completing the 8th grade. The marriage did not last very long. She married again and went onto have three children. When she was 35 years of age, she lost her oldest son to COPD. *See* PSR at ¶34.

During her lifetime, Mrs. Cox has lost four siblings. One of them passed away from an overdose and the other one committed suicide. See PSR at ¶33. Mrs. Cox received an ACE score of 7 out of 10. Significantly, the PSR noted that she suffered trauma and dysfunction in her life. PSR at ¶37. Notably, she never received any menta health treatment. In 1983, Mrs. Cox married her current husband. Although they are still married, there were periods in the marriage where the relationship was strained, and they were separated.

Mrs. Cox suffers from a variety of physical health issues. In 1988, Mrs. Cox was diagnosed with Hemolytic Anemia (HA), which is a blood disorder caused by the abnormal breakdown of red blood-cells. COX reported that her HA is dormant at this time. It is noted that the steroids that were used to treat the HA caused her to have early onset glaucoma in both eyes. In early 1989, she was diagnosed with Lupus and Fibromyalgia. In 2000, she began to experience digestive issues which was

3

eventually diagnosed as Diverticulitis and Gastritis. In 2021, she was diagnosed with Type II Diabetes.

In April 2021, she was diagnosed with COVID-19, which caused swelling and blood clots in her legs. She underwent surgery to repair the life-threatening condition. She has been experiencing long-term COVID in the form of brain fog and was infected again with COVID-19 in late May or early June of 2022. See PSR at ¶ 36. She takes a number of medications and has a team of doctors at Beaumont Medical Hospital.

Mrs. Cox understands and acknowledges the seriousness of this offense and the harm caused by using money belonging to the victim agencies in this case. While the offense of conviction in this case is serious, as the Probation Department has indicated, "*any sanction* imposed by the Court would likely address the seriousness of the offense, promote respect for the law and provide just punishment." PSR ¶ 65. (emphasis added).

### B. The Need to Deter, Protect the Public and Promote Respect for the Law Can be Achieved with a Non-custodial Sentence.

A sentence of imprisonment will not further the need for deterrence or protection of the public in this case. As stated above, Mrs. Cox has no criminal history. It is unlikely that Mrs. Cox will ever be in a position to take advantage of any SSI benefit again. Moreover, at the age of 70, Mrs. Cox is unlikely to engage

in any criminal conduct in the future.

While on pretrial release, Mrs. Cox has remained fully compliant with all conditions. Her behavior under these conditions is a strong indicator of her likelihood of success if placed on probation or supervised release. Her overall conduct from the time of her arrest up to and including the present time signifies her respect for the law, self-rehabilitation, and likelihood of future, law-abiding behavior, such that she poses no risk to the community or does not need jail to keep her from reoffending.

### C. The Need for Effective Medical Care and Treatment.

As set forth Mrs. Cox has an array of medical conditions that are currently being treated by her team of doctors at Beaumont. According to a Department of Justice Report, issued in May of 2015, "BOP institutions lack appropriate staffing levels to address the needs of an aging inmate population and provide limited training for this purpose." See U.S. Justice Dept. Report (May 2015) The Impact of An Aging Prisoner Population on the Bureau of Prisons, Executive Summary Found at: https://oig.justice.gov/reports/2015/e1505.pdf. (last accessed Aug. 18, 2022) Critically, the study found that the increasing population of aging inmates has resulted in a need for increased trips outside of institutions to address their medical needs but that institutions lack Correctional Offices to staff these trips and have limited medical staff within institutions. "Aging inmates are more costly to incarcerate primarily due to their needs." Moreover, wait times for treatment in

outside prison hospitals is unacceptably long. "For example, using BOP data from one institution, we found that the average wait time for inmates, including aging inmates, to be seen by an outside medical specialist for cardiology, neurosurgery, pulmonology, and urology to be 114 days." Simply stated. Mrs. Cox has medical needs that require timely and consistent care. The BOP's health care system is unpredictable and unlikely to provide the level of adequate medical care that she currently receiving.

When determining the appropriate sentences, Courts have considered the individual's health in determining whether to impose a below-guidelines sentence. *See United States v. Kinzer*, 365 Fed.Appx. 646, (6th Cir. 2010) (holding that 30 month variance from guidelines was reasonable where district court considered the health and age of the defendant, among other 3553(a) factors); *United States v. Smith*, 590 F.3d 570, 575 (8th Cir. 2009) (noting that the district court imposed a below-guidelines sentence, in part, because of the defendant's "poor health"); *See also United States v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) (finding probation was reasonable for defendant based on 56 years of age and health where guideline range was 78-97 with statutory maximum of 5 years.) For example, following the defendant's conviction after trial for wire fraud in *United States v. Burks*, 2010 WL 1221752 at *2 (E.D.N.Y. Mar. 29, 2010) (imposing a sentence of one month incarceration and five years' probation where Guideline range was 57-71 months

6

where, inter alia, the defendant suffered from degenerative diabetes );*United States v. Alatsas,* 2008 WL 238559 (E.D.N.Y. Jan. 16, 2008) ((imposing a term of probation, despite Guidelines range of 24-30 months where, interalia, "[d]efendant has multiple complex medical problems, which will be better cared for outside of prison.");*United States v. Sobol,* 2008 WL 4427908, *1 (E.D.N.Y. Sept.12, 2008) (unpublished.) (where, in imposing a below-guidelines sentence, the court did so, in part, because of the defendant suffered from "several significant health issues"). Given Mrs. Cox's health and medical conditions, there is the realistic consideration that her health is likely to worsen over time, posing difficulties for her and the Bureau of Prisons.

## II.
## CONCLUSION

Mrs. Cox comes before this Court a first-time offender at the age of 70. She has a variety of health issues, needs a great deal of medical care, and will soon suffer lasting financial devastation as a result of this conviction. Her crime was one of opportunity. It is highly unlikely that she will ever commit a crime in the future. A non-custodial sentence is sufficient, but no greater than necessary, to accomplish the goals of the sentencing statute

>Respectfully submitted,
>Federal Defender Office
>/s/Natasha D. Webster
>Natasha D. Webster
>Counsel for Mrs. Cox
>613 Abbott Street 5th Floor
>Detroit, MI 48226
>(313) 967-5847

<div align="right">Natasha_Webster@fd.org</div>

Dated: August 18, 2022

## **CERTIFICATE OF SERVICE**

I certify that on August 18, 2022, I filed the foregoing document by way of EFC and a copy of same was electronically forwarded to the opposing counsel of record and the Probation Department namely, Ryan Particka and Corrine Lambert of the U.S. Attorney's Office and William Hampstead of the U.S. Probation Office.

<div style="margin-left:50%">
Respectfully submitted,

/s/ Natasha D. Webster  
Counsel for Mrs. Cox
</div>